UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DANIEL SCHAEFFER, ) | |
| ) | |
| Petitioner, ) | Case No. 1:17-cv-00147-PLR-SKL |
| ) | |
| v. ) | |
| ) | |
| ELIZABETH SHIRLENE ) | |
| JACKSON-SCHAEFFER, ) | |
| ) | |
| Respondent. ) | |

## **REPORT AND RECOMMENDATION**

Before the Court is a motion for fees and expenses filed by Daniel Schaeffer ("Father"), with a supporting memorandum and documentation [Doc. 65]. Father seeks a grand total award of $117,170.96; including $83,831.39 in legal fees and litigation expenses, and $33,339.57 in other expenses. Elizabeth Shirlene Jackson-Schaeffer ("Mother") filed a response opposing the motion [Doc. 70], and Father filed a reply in support [Doc. 71]. This matter was referred for issuance of a report and recommendation [Doc. 66], and is now ripe.

For the reasons set forth below, I **FIND** Father is entitled to payment of the necessary expenses he incurred to ensure the safe return of the children to Germany. I further **FIND** those necessary expenses total $78,534.79; including $73,242.30 in legal fees and litigation expenses, and $5,292.49 in other expenses. I therefore **RECOMMEND** Father's motion for fees and expenses be **GRANTED IN PART and DENIED IN PART**, and a judgment be entered against Mother in the amount of $78,534.79.

**I.     BACKGROUND**

This case was brought by Father pursuant to the 1980 Convention at The Hague on the Civil Aspects of International Child Abduction (the "Convention"), and the implementing United States statute, the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9011 ("ICARA"). Article 26 of the Convention provides:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Section 9007 of ICARA provides, in relevant part:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3).

Mother was ordered to return the two minor children to Germany after a bench trial on January 18, and 19, 2018 [*see* Doc. 58]. Thus, pursuant to the controlling federal law, the Court "shall order" Mother to pay Father's "necessary expenses . . . including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child," unless Mother has established that ordering such expenses "would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). Father seeks the following legal expenses:

1. Ms. Rebecca McKelvey Castañeda (attorney) - 13.75 hours[1] at $350/hour, for a total of $4,812.50.

2. Mr. Brenton H. Lankford (attorney) – 80.50 hours at $270.06/hour, for a total of $21,740.

3. Ms. Ashley N. Goins (attorney) – 225 hours[2] at $230.30/hour, for a total of $51,835.

4. Ms. Kathy A. Hagerty (paralegal) – 19.25 hours at $160/hour, for a total of $3,080.

5. Litigation expenses - $2,363.89

Total: $83,831.39.

[Doc. 65 at Page ID 407-09].

Ms. McKelvey Castañeda, Mr. Lankford, Ms. Goins, and Ms. Hagerty all work out of the Nashville office of Stites & Harbison, PLLC.

Father also requests the following travel and other expenses:

1. Petitioner's flight from Germany to Atlanta - $1,230.26

2. Rental car from 1/15/18 through 1/26/18 - $327.67

3. Lodging - $940.82

4. Petitioner's and children's flights from Atlanta back to Germany - $2,224.40

5. Luggage fees for return flight - $50

6. Food expenses - $298.47

7. Gas - $171.72

8. Parking - $78

9. Taxi - $52.02

---

[1] Ms. McKelvey Castañeda expended 23.75 hours of work, but only billed for 13.75 hours.

[2] Ms. Goins expended 270.50 hours of work, but only billed for 225.00 hours.

3

    10. Luggage/other items for the children purchased from Walmart - $171.78

    11. Passport fees - $51.82

    12. ACON investigation - $27,742.61

    Total: $33,339.57

[Doc. 65 at Page ID # 409-10].

  Mother asserts generally that the award of fees and expenses would be unjust and inappropriate, arguing that to award Father all of the expenses would allow Father to "capitalize on having made the case more complicated than it needed to be" and that Father "has run up expenses more appropriate for the divorce." [Doc. 70 at Page ID # 538]. Mother challenges the number of hours Father's attorneys worked and argues that having two attorneys present throughout the trial was unnecessary. She contends that Father did not sufficiently demonstrate that his attorneys used "billing judgment," and that the attorney fee award should be reduced by 15% [*id.* at Page ID # 540-42]. Mother does not argue that the hourly rates charged were unreasonable. Mother also specifically objects to the expense of the ACON investigation (a private investigator), the Walmart items, the rental car, food and lodging for the private investigator to travel with Father, and Father's food [*id.* at Page ID # 539-40]. Finally, counsel for Mother writes that she "knows of no employment held by [Mother] since returning to Germany to be with the children and therefore has no means of paying any grant of fees and/or expenses." [*id.* at Page ID # 536].

  Regarding the attorney hours, Father notes that Ms. Goins, a third-year associate, tried the case, while Mr. Lankford, "a seasoned trial lawyer" sat second chair [Doc. 71 at Page ID # 545]. Mr. Lankford's role at trial was to develop "overall strategy," provide "input on the examination of witnesses," and assist "with settlement negotiations . . . ." [*id.*]. Father also states that "in the rare instance where Father's lawyers billed for the same meeting, each lawyer left that meeting

4

with assigned tasks that he or she was responsible for completing." [*id.*]. Father also emphasizes that the attorneys have already reduced the bill through "no charge" time entries, and that Father did not request reimbursement for the fees or travel expenses incurred by his expert witness. Father points out that Mother requested a continuance of the trial, Father took the opportunity created by the delay to depose Mother, and that Mother also made the choice to depose Father, which increased fees [*id.* at Page ID # 545-46].

As for the other, non-legal expenses, the largest one is the ACON private investigation. Father states that he hired this investigator, who is based in Germany, "to determine the welfare and the location of the children." [Doc. 65 at Page ID # 411]. Father argues that this was necessary because when Mother left Germany with the children, "Father, understandably, lost all trust in what Mother was telling him." [Doc. 71 at Page ID # 546]. The investigator's invoice is entirely in German [Doc. 65-13].

As for the smaller items which Mother objects to, Father argues the children were in the United States for over one year and acquired new items which had to either be shipped or taken on the plane in suitcases. Father argues that "it is common knowledge that international shipping fees are expensive. Had Father shipped the children's belongings, he would be requesting reimbursement from Mother for that expense since he would not have incurred that expense if Mother had not abducted the children." [Doc. 71 at Page ID # 547]. Father also points out that he needed a rental car to travel to and from the airport, court, and other locations within the United States, and that the food expenses were included because Father and the children were "forced to eat out due to the fact that their Father was staying in hotel rooms in the United States." [*id.*]. Father states that a $150 deduction could possibly have been appropriate from the food bill to account for the fact the bill includes food for the investigator and Father's counsel, "if Father's attorney fees hadn't already been reduced and Father had asserted a claim to recover his expert

5

witness fees" [*id.*]. Finally, Father contends he is not seeking reimbursement for the investigator's travel expenses when the investigator accompanied Father to Chattanooga for the trial; rather, he only asks for the lodging expenses the investigator incurred when the investigator "first came to Chattanooga in February 2017 to locate the children." [*id.*].

**II.       ANALYSIS**

As mentioned, Mother contends that any award to Father would be "clearly inappropriate" in light of Mother's financial status and Father's actions preceding the filing of the petition and during the course of the proceedings. I respectfully disagree. Although a party's financial resources *can* be a consideration when awarding necessary expenses, *see Rydder v. Rydder*, 49 F.3d 369, 373-74 (8th Cir. 1995), in this case there is no proof of Mother's inability to pay. Mother did not attach any documentation or other evidence of her current finances to her response. Her counsel simply states that Mother spent $14,000 on psychological treatment for the children in the United States, and that Mother has been "rendered homeless in Germany and who knows if she even has a job." [Doc. 70 at Page ID # 535-36]. This is insufficient to show that an award of necessary expenses to Father would be "clearly inappropriate" under ICARA. *See Salazar v. Maimon*, 750 F.3d 514, 519-20 (5th Cir. 2014) (holding that the removing parent has the burden of proof to show that an award of necessary expenses is clearly inappropriate); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)). The proof at trial was that Mother is highly educated, bilingual, and has lived in Germany for a number of years. Even if she is currently unemployed, there is no proof she lacks the ability to find suitable employment, or that an award to Father would hinder her ability to co-parent the children.

Moreover, the Court has already denied Mother's affirmative defenses and has ordered the children be returned to Germany [Doc. 58]; accordingly, regardless of whether Father filed a police report against Mother for kidnapping, moved his girlfriend into his home (which Father denies), or whether Father's parents have acted inappropriately toward the children, Father is entitled to payment of his necessary expenses related to the children's safe return to Germany. Issues regarding specific fees and expenses are addressed below.

### A. Legal Fees/Expenses

Courts typically apply the lodestar method—the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate—to determine whether the fees in an ICARA case are reasonable.[3] *See Chafin v. Chafin*, No. CV-11-J-1461-NE, 2012 WL 12893523, at *3-4 (N.D. Ala. Mar. 7, 2012) (awarding petitioner necessary expenses; citing cases applying the lodestar method for evaluating reasonableness of legal fees); *see also Hensley*, 461 U.S. at 433 (holding that in fee-shifting cases the basis of a fee award is the proven number of hours reasonably expended multiplied by a reasonable hourly rate). The reasonableness of the hours expended and the attorney's hourly rate must be considered on a case-by-case basis. *Hensley*, 461 U.S. at 429.

---

[3] There are twelve factors which the district court may consider in determining whether to make adjustments to the lodestar amount. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9. These factors are:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 471 n.3 (citation omitted).

7

Counsel is expected to exercise "billing judgment" in seeking an award of fees. *Id.* at 434. Moreover, paralegal fees are compensable under fee shifting statutes at the rates at which their services are billed to clients. *See Missouri v. Jenkins*, 491 U.S. 274, 287-89 (1989) (citations omitted); *see also Flynn v. Borders*, No. 5:06-323-JMH, 2007 WL 862548, at *3 (E.D. Ky. Mar. 20, 2007) (ICARA fee award included paralegal fees).

The burden of establishing the reasonable fee is on the fee applicant. *Id.* at 433; *see also Reed*, 179 F.3d at 472 (citation omitted); *Chafin*, 2012 WL 12893523, at *4 (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). The fees requested should be documented, and, where they are not, the district court may reduce the award accordingly. *Reed*, 179 F.3d at 472 (internal quotation marks and citation omitted). "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed*, 179 F.3d at 471). Hours which are "excessive, redundant, or otherwise unnecessary," are not reasonably expended. *Hensley*, 461 U.S. at 434. "[D]eference is to be given to a district court's determination of a reasonable attorneys' fee." *Geier*, 372 F.3d at 791. "Nevertheless, it remains important for the district court to provide an adequate explanation of the reasons for its award and the manner in which that award was determined." *Id.* (citing *Hensley*, 461 U.S. at 437).

### 1. Hourly rates

The requested hourly rate must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 972 (N.D. Ohio 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Id.*

8

As stated, Mother does not challenge the hourly rate charged by Father's attorneys or paralegal ($350/hour for Ms. McKelvey Castañeda, $270.06 for Mr. Lankford, $230.30/hour for Ms. Goins, and $160/hour for Ms. Hagerty). Father attached an affidavit from Mr. Martin Sir, an attorney who has practiced in Tennessee since 1980, and has primarily practiced in domestic relations law for the past eleven years [Doc. 65-4]. Mr. Sir attests that he reviewed the hourly rates, and that in his professional opinion, "the hourly rates . . . were necessary and reasonable, and commensurate with the fees charged for this type of case in this state." [*id.* at Page ID # 463]. Each of Father's attorneys also attests that the charged rates are reasonable, given the "complexity and nature of the case, as well as the time constraints involved." [*see* Docs. 65-1, 65-2, and 65-3].

In *Burnett v. Burnett*, No. 3:13-cv-492, 2014 WL 1340058, at *4-5 (E.D. Tenn. Apr. 3, 2014) (order adopting and incorporating report and recommendation in an ICARA case), the court held that $375/hour was not a reasonable hourly rate for work performed in the Eastern District of Tennessee. The court held that "$300.00 is the highest hourly rate that can be found to be reasonable for specialized and complex federal litigation in Knoxville and Chattanooga." *Id.* at *5 (citing cases). In *Guevara v. Soto*, No. 3:15-cv-548-TAV-CCS, 2016 WL 8117955, at *1-2 (E.D. Tenn. Dec. 20, 2016), *report and recommendation adopted*, 2017 WL 401214 (E.D. Tenn. Jan. 30, 2017), another ICARA case, the court similarly approved an award of $300/hour for the lead counsel who had "practiced law for more than thirty years," and an award of $250/hour each for two other attorneys, at least one of whom was an associate. The *Guevara* court found, however, that "there is no evidence in the record that the $100.00 per hour [rate] for a paralegal is reasonable," and instead recommended an award of $75/hour for the paralegal work. *Id.* at *3.

Guided by these recent ICARA fee cases, I **RECOMMEND** that Mr. Lankford's and Ms. Goins's hourly rate be approved, Ms. McKelvey Castañeda's rate of $350/hour be reduced to

9

$300/hour,[4] and Ms. Hagerty's rate be reduced from $160/hour to $75/hour. Father has the burden of proving the reasonableness of the rates, and he has not offered any proof that Ms. McKelvey Castañeda's and Ms. Hagerty's rates should exceed the rates ordered in *Burnett* and *Guevara*. It is likely that attorneys and paralegals command higher rates in ICARA cases in Nashville, where Ms. McKelvey Castañeda and Ms. Hagerty are based, than they do in Chattanooga and Knoxville. Mr. Sir's affidavit, while helpful, discusses the reasonableness of rates throughout the *state*, not limited to the Eastern District of Tennessee.

### 2. Hours expended

Mother does challenge the total number of hours expended on the litigation. She specifically objects to the "15 or more hours requested for 'drafting,'" the meetings in which more than one attorney billed their time, and the fact that Mr. Lankford sat in on the trial with Ms. Goins "but did not participate beyond the training of the younger less experienced counsel" [Doc. 70 at Page ID # 540-41]. In lieu of conducting an "hour by hour analysis," Mother points out that other courts have simply "reduce[d] the requested hours across the board." [*id.* at 541 (citing *Bivins v. Wrap It UP, Inc.*, 584 F.3d 1348, 1350 (11th Cir. 2008)]. Mother advocates for a 15% reduction in the overall award, after her other more specific objections are sustained. Father does not agree that any further reduction is appropriate, considering that counsel have already "significantly reduced Father's attorney fee bill," and Father has not requested Father's expert witness fees [Doc. 71 at Page ID # 545-46]. Counsel also waived all fees and expenses incurred in filing the instant motion [Doc. 65 at Page ID # 410]. Father does include a calculation in his motion for an across-the-board 10% discount [*id.*].

---

[4] I again note that neither Ms. McKelvey Castañeda nor Ms. Goins billed for all of the hours they actually worked on this case, which is generous given the high stakes for Father and the compressed timeline of the litigation.

10

Mother cites no authority to support her contention that Father overcomplicated the case by deposing her, or that it was inappropriate for Father's counsel to spend 15 hours "drafting" in a case bound to have a profound effect on all members of the family.  Indeed, drafting pleadings is a significant component of any case, and the task ought to be taken seriously.  Attorneys should spend time and energy thoughtfully drafting documents or pleadings and outlining oral presentations in advance to ensure they include logical, complete arguments and citations to appropriate authorities.

The Court also rejects Mother's undeveloped argument that Father's counsel overbilled because they occasionally met with each other to discuss the case.  The meetings where this happened do not appear to have been lengthy—for example there was a short, 45-minute meeting between Mr. Lankford, Ms. Goins, and Father on January 16, 2018, "to prepare for trial," that appears to have been billed by Mr. Lankford and Ms. Goins [Doc. 65-1 at Page ID # 451].  Ms. McKelvey Castañeda did not bill for her 30-minute "last minute telephone call with Ashley Goins and Brent Lankford re trial preparation and witnesses." [*id.*].  Earlier in the case, Ms. Goins spent 1.5 hours revising Father's petition; that same day, Mr. Lankford billed 15 minutes for conferencing with Ms. Goins concerning the revisions [*id.* at Page ID # 420].  There are numerous examples in the billing statements of the attorneys meeting together and conferencing; however, the meetings are usually brief and Father's explanation—that the attorneys would meet to divide up the labor—is reasonable and persuasive.

Mother's argument that it was unnecessary for Mr. Lankford to attend the trial with Ms. Goins, without actively participating in it, is more persuasive.  In *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 636 (6th Cir. 1979),[5] the United States Court of Appeals

---

[5] This case has been abrogated on other grounds, as recognized in *L&W Supply Corp. v. Acuity*, 475 F.3d 737, 739-740, n.6 (6th Cir. 2007) (citations omitted).

11

for the Sixth Circuit expressly stated that in fee-shifting cases, the hours awarded "may be cut for duplication, padding or frivolous claims." The *Northcross* court approved of "the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours" in "complicated cases, involving many lawyers." *Id.* at 636-37 (citation omitted). The court noted that this approach "seems preferable to an attempt to pick out, here and there, the hours which were duplicative." *Id.* at 637. Here, however, it is easy to identify the hours charged by Mr. Lankford while attending trial with Ms. Goins. The billing statement provides that "BHL" (Mr. Lankford) charged 14 hours on January 18, 2018, a total of $3,850, to "travel to Chattanooga for trial; attend day 1 of trial; prepare for day 2 of trial." [Doc. 65-1 at Page ID # 452]. On January 19, 2018, Mr. Lankford billed 11 hours, a total of $3,025, to "attend Day 2 of trial; travel from Chattanooga to Nashville." [*id.*]. This is a total of nearly $7,000, mostly to "attend" a trial.

It is commendable for Mr. Lankford to devote professional time to train and supervise Ms. Goins, a less experienced attorney. However, I **FIND** Father has failed to establish that Mr. Lankford's presence during the actual trial was a necessary expense related to the return of the children, even if his traveling to Chattanooga to help Ms. Goins prepare was reasonable and necessary. Assuming the trial lasted for seven hours on January 18, 2018, and seven hours on January 19, 2018, I **FIND** 14 hours should be deducted from Mr. Lankford's bill for "attending" the trial. Mr. Lankford also billed 11.5 hours on January 4, 2018, to "Attend deposition of [Mother] in Chattanooga." [*id.* at 448]. It appears that at least part of his travel time was used to assist Ms. Goins in preparing for the deposition, and so four of these 11.5 hours should not be deducted; however, I **FIND** Father has failed to show that Mr. Lankford's presence during the deposition was a necessary expense, and therefore an additional 7.5 hours should be deducted from Mr. Lankford's overall time, for a total deduction of 21.5 hours relating to unnecessary legal services.

12

Father does cite cases where court have awarded fees to multiple attorneys, and argues that "[t]he purpose of the award is to restore petitioner to the financial position that he would have been in prior to the removal of the child and to deter the unlawful removal." [Doc. 65-16 at Page ID # 524 (quoting *Hamprecht v. Hamprecht*, No. 2:12-cv-125-FtM-29DNF, 2013 WL 1155675, at *1 (M.D. Fla. Mar. 14, 2013)]. However, in *Hamprecht*, the court combed through counsel's time entries, and reduced the fees of an attorney who attended the final hearing but did not participate in the final hearing, noting that "[w]hen multiple attorneys are involved, the Court must consider whether they are being compensated for their distinct contributions or whether there is duplication. *Id.* at *2, *4, *6 (citations omitted). While the court awarded that attorney fees for other work he did on the case, the court held it would not "award fees to petitioner for [the attorney's] attendance at the final hearing, or his duplicative review of co-counsel's work . . . ." *Id.* at *6. In *Wasniewski*, 549 F. Supp. 2d at 976-77, the court awarded fees for multiple attorneys being present at the pretrial conference and the trial. The opinion does not identify whether all the attorneys participated or not; rather, the court specifically relied on the fact that both petitioner and respondent had multiple attorneys present during the proceedings. Here, Mother has only one attorney of record. In *Kufner v. Kufner*, No. 07-46S, 2007 WL 1521248, at *3 (D.R.I. May 23, 2007), as Father points out, the court awarded attorney fees and costs of over $350,000, far more than what Father is requesting here. Nevertheless, in that case, the court ordered a "one-quarter reduction in hours to eliminate duplication and overstaffing." *Id.* at *2. Finally, in *Flynn*, 2007 WL 862548, at *3, the court approved an award involving three attorneys, but again it is not entirely clear from the opinion how the work was divided. In any event, the total award in *Flynn* was only 36.1 hours. Accordingly, the cases cited by Father are distinguishable.

The billing statement also reflects some work that appears to be related to the divorce case filed by Mother in the Hamilton County Circuit Court and, to a lesser degree, to the proceedings

13

in Germany. This work appears to include at least one half hour by Ms. McKelvey Castañeda, 5.5 hours by Mr. Lankford, and 3.5 hours by Ms. Goins that has not been shown to be directly connected to safely returning the children to Germany [*see* Doc. 65-1, for example at Page ID # 419 the 4/24/15 entry that includes reviewing the divorce complaint and proposed parenting plan filed by Mother in Circuit Court and at Page ID # 427 the 7/5/17 entry that includes conferencing with the Father and the German divorce attorney regarding German proceedings]. Courts have found that such entries associated with divorce proceedings should not be awarded. *See Hamprecht*, 2013 WL 1155675, at *4 ("Many of the entries . . . are clearly associated with the state court dissolution of marriage only and therefore will be eliminated or reduced to reflect only those hours associated with [T]he Hague petition proceedings."); *see also Berendsen v. Nichols*, 938 F. Supp. 737, 738 (D. Kan. 1996) ("The court does not believe petitioner should be compensated for counsel's work in connection with a state court divorce action."). Accordingly, I **FIND** these hours should not be awarded.

Finally, Father requests $2,363.89 in "litigation expenses." [Doc. 65 at Page ID # 409]. These include copies, postage, filing fees, service of process, legal research, translations of documents, office supplies, and most significantly travel for the attorneys [*see* Doc. 65-1 at Page ID 454-55]. I **FIND** each of these expenses was necessary and should be awarded. Mr. Lankford did not bill for his travel expenses to attend the depositions. He did bill for travel expenses to attend the trial; however, while his attendance during all fourteen hours of trial was not necessary, it was reasonable for him to travel to Chattanooga to assist Ms. Goins with preparation and planning before and after trial on January 18 and 19, 2018. Ms. Goins's travel expenses are also reasonable and necessary.

In sum, I **FIND** the legal fees and expenses set forth below were necessary to secure the safe return of the children to Germany, especially given the complexity and nature of the case, the

14

compressed timeline of the litigation, and the favorable result Father's counsel obtained for him. I therefore **RECOMMEND** that the following fees be awarded:

1. Ms. McKelvey Castañeda – 13.25 hours at $300/hour, for a total of $3,975.

2. Mr. Lankford – 53.5 hours at $270.06/hour, for a total of $14,448.21.

3. Ms. Goins – 221.5 hours at $230.30/hour, for a total of $51,011.45

4. Ms. Hagerty – 19.25 hours at $75/hour, for a total of $1,443.75

5. Litigation expenses - $2,363.89

Total: $73,242.30[6]

**B.     Other Expenses**

Mother specifically objects to a number of Father's other expenses, including the Walmart purchases, the rental car, travel expenses for the investigator, food for Father and the investigator while they were in the United States, and "each and every charge listed on the investigator's billing." [Doc. 70 at Page ID # 538-40].

I **FIND** Father is entitled to most of the Walmart expenses, the bulk of which were suitcases that Father used to bring the children's belongings home to Germany [Doc. 65-12]. It is reasonable (and in the children's best interests) to not force children to part with their belongings at the conclusion of an already traumatic experience. Mother contends that rather than buying luggage and transporting the items on the airplane, Father could have shipped the items back to Germany [Doc. 70 at Page ID # 539]. However, as Father points out, international shipping fees would likely be close to, if not greater than, the cost of suitcases at Walmart and the $50 fee for the children to carry their luggage on the plane. Nevertheless, Mother is correct that approximately

---

[6] This reflects the reduction in the hourly rates of Ms. McKelvey Castañeda (from $350 to $300), and Ms. Hagerty (from $160 to $75), and reductions in the number of hours worked by Ms. McKelvey Castañeda (0.5 hours), Mr. Lankford (27 hours), and Ms. Goins (3.5 hours).

15

Case 1:17-cv-00147-PLR-SKL   Document 72   Filed 04/16/18   Page 15 of 19
PageID #: 563

$6 was spent on Perrier sparkling water at Walmart. I **FIND** that the Perrier was not necessary for the safe return of the children, and accordingly Father should not be awarded this expense.

I further **FIND** that Father is entitled to the cost of a rental car. Mother's primary argument against this expense is that the car was rented in the name of his traveling companion, who was also the investigator in this case [Doc. 70 at Page ID # 539]. Mother also contends that "other modes of transport were readily available," but she does not identify what mode would have been any cheaper than a rental car [*id.*]. Father states that, while the car was rented in the investigator's name, he was ultimately responsible for the cost. Father also states that he used the car to travel back and forth from Chattanooga to the airport and German Consulate in Atlanta, to visits with the children in Chattanooga, and to and from court. Clearly, these trips were necessary and related to the safe return of the children to Germany, and hiring a taxi for each of these trips would have exceeded the cost of a rental car. *See Berendsen*, 938 F. Supp. at 738-39 (awarding rental car costs as a necessary expense).

I further **FIND** that Father should not be awarded $298.47 for eating meals out while in the United States. Mother has the better argument here—Father would have eaten regardless of whether he was in Germany or the United States.

I further **FIND** that $27,742.61 is excessive for the cost of an investigator and should not be awarded. Father states that the purpose of hiring the investigator was to "confirm the whereabouts of the children and to conduct a welfare check on the children." [Doc. 71 at Page ID # 546]. Father attaches a copy of the investigator's bill, which is entirely in German [Doc. 65-13]. Perhaps it was reasonable and necessary for Father to retain the services of an investigator to confirm that the children were in Chattanooga, so that Father would know where to look for an attorney and file his petition. However, Father clearly suspected or even knew as early as July 2016 that Mother was in Chattanooga, as he listed a Chattanooga address on the "Request for

16

Return" that he filed with the German Central Authority [Doc. 2-11 at Page ID # 90, 96]. Yet the investigator did not perform any work for Father until February 2017 [Doc. 65-13]. Father also could have hired a local Chattanooga investigator to check on the children's whereabouts, presumably for much lower cost. Moreover, it is impossible to tell what activities the investigator actually did. Father states in his reply that he can provide a translated bill "if the Court requires." [Doc. 71 at Page ID # 546]. Father has the burden to establish his expenses are necessary. *See Neves v. Neves*, 637 F. Supp. 2d 322, 343 (W.D.N.C. 2009) (denying portion of award because petitioner failed to show that the specific requested expense was necessary). It is not the Court's role to tell Father what documentation he should provide to substantiate his claim that the nearly $30,000 bill was a necessary expense. It is the Court's role to determine whether the documentation provided is sufficient; I **FIND** the bill provided is not sufficient to determine whether any of the work done by the investigator was necessary to secure the children's safe return to Germany.

Because I **FIND** Father should not be awarded the expense associated with the investigator, I further **FIND** that Father should not be awarded the cost of the investigator's lodging in the United States during his investigation in February 2017. However, it isn't clear what portion of the $940.82 is attributable to the investigator's February 2017 trip. The receipts submitted in conjunction with the motion are all from January 2018, near the time of the trial [Doc. 65-7]. A different exhibit, titled "Exhibit A to Petitioner's Declaration," appears to show that *Father's* hotel expenses in January 2018 were: $182.40 for 1/15 to 1/17; $418.32 for 1/17 to 1/19; $63.30 for

17

1/19 to 1/20; $137.16 for 1/24 to 1/26; and $139.64 for 1/25 to 1/26[7] [Doc. 65-15]. These amounts total $940.82, and were clearly necessary, as they were incurred during the time Father was in the United States shortly before, during, and shortly after the trial. Accordingly, I **FIND** Father is entitled to reimbursement for $940.82 in lodging expenses.

I **FIND** all the remaining expenses claimed by Father—such as the airline tickets for Father and the children to return to Germany, gas, parking and passport fees—which were not objected to by Mother, are reasonable and necessary.

In sum, I **FIND** that Father should be awarded the following other expenses:

1. Father's airline ticket from Germany to Atlanta - $1,230.26
2. Rental car - $327.67
3. Lodging - $940.82
4. Airline tickets for Father and children to return to Germany - $2,224.40
5. Luggage fees for the children's return flight - $50.00
6. Gas - $171.72
7. Parking - $78
8. Transportation/Taxi - $52.02
9. Luggage/clothing for children from Walmart - $165.78
10. Passport fees - $51.82

Total: $5,292.49

---

[7] There appears to be two rooms rented on January 25, 2018 [*see* Doc. 65-15]. One of those rooms was rented by someone other than Father, as evidenced by the name on the receipt [*See* Doc. 65-7 at Page ID # 473]. That same receipt, however, includes the only room charged for the night of January 24, 2018, which suggests that Father stayed in this room at least on January 24, 2018. In light of the substantial other deductions recommended, the overall reasonableness of Father's hotel charges, and the fact that Father denies having requested lodging expenses for the investigator in January 2018 [*see* Doc. 71 at Page ID # 547], I have not recommended a further deduction for January 25, 2018.

18

### III. CONCLUSION

In sum, I **FIND** Father is entitled to payment of the necessary expenses he incurred to ensure the safe return of the children to Germany. I further **FIND** those necessary expenses total $78,534.79; including $73,242.30 in legal fees and litigation expenses, and $5,292.49 in other expenses. I therefore **RECOMMEND** Father's motion for fees and expenses be **GRANTED IN PART and DENIED IN PART**, and a judgment be entered against Mother in the amount of $78,534.79.[8]

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[8] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

19

Case 1:17-cv-00147-PLR-SKL   Document 72   Filed 04/16/18   Page 19 of 19
PageID #: 567